UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                                                        :
WISTRON NEWEB CORPORATION,                                              :
                                                                        :
                              Plaintiff,                                 :
                                                                        :
                                                                        :                22-cv-2538 (LJL)
               -v-                                                       :
                                                                        :              MEMORANDUM AND
GENESIS NETWORKS TELECOM SERVICES, LLC                                   :                    ORDER
and GNET ATC, LLC,                                                       :
                                                                        :
                              Defendants.                                :
                                                                        :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiff Wistron NeWeb Corporation ("Plaintiff," "Wistron," or "WNC") submits a

renewed motion for summary judgment on an award of attorneys' fees, costs, and prejudgment

interest.  Dkt. No. 108.  Defendant Genesis Networks Telecom Services, LLC ("Genesis")

submits a "limited" opposition, objecting to the motion based solely on the fact that it is

premised on this Court's July 12, 2023 Opinion and Order, Dkt. No. 102 ("July 2023 Opinion"),

granting in part and denying in part Plaintiff's prior motion for summary judgment, which

Defendant believes will be reversed on appeal.  Dkt. No. 113.  Genesis otherwise does not

challenge the merits of the motion.  Defendant GNET ATC, LLC ("GNET" and, together with

Genesis, "Defendants") does not submit an opposition.

      For the following reasons, Plaintiff's renewed motion for summary judgment is granted.

## BACKGROUND

      The Court assumes familiarity with the background and procedural history of this case,

which was outlined in the July 2023 Opinion.  Dkt. No. 102.  The following facts are drawn from

Plaintiff's Rule 56.1 Statement and the facts before the Court on the July 2023 Opinion, and are undisputed.[1]

On February 1, 2019, Plaintiff and Genesis entered into a Non-Exclusive Distributor Agreement (the "Distributor Agreement"). Dkt No. 112 ¶ 1. In this Court's July 2023 Opinion, the Court granted summary judgment to Wistron for an award in the amount of $9,212,256.94 for the failure to pay for products delivered under the Distributor Agreement, the total amount due and owing to Wistron under the unpaid invoices. Dkt. No. 102 at 50; Dkt. No. 112 ¶ 6. The Court denied summary judgment without prejudice to renewal as to an award for prejudgment interest and attorneys' fees and costs. Dkt. No. 102 at 50.

Under the Distributor Agreement, Wistron is entitled to recover prejudgment interest and all costs of collection, including litigation costs and attorneys' fees. Dkt. No. 69-1; Dkt. No. 112 ¶ 1. Section 4.2 of the Distributor Agreement reads as follows:

> Distributor shall pay for all products within ninety (90) days after title transfer from WNC. After the due date for any payment, the lesser of one and one half (1.5%) percent of the unpaid balance (annual rate of 18%) or the maximum late payment penalty charge permitted by law may be added for each month or part thereof that payment is delayed. Distributor shall also reimburse WNC for all costs associated with WNC's attempt to collect amounts due under an order, including all costs associated with employing a collection agency or initiating legal action to collect amounts due.

Dkt. No. 69-1 § 4.2; Dkt. No. 112 ¶ 8. Additionally, Section 17.1 of the Distributor Agreement states in relevant part:

> Each Party shall defend, indemnify and hold harmless the other Party . . . from and against all losses damages (actual, increased, or statutory), liabilities, expenses, costs (including court costs and attorney's fees), claims, suits, demands, actions, causes of actions, proceedings, judgments, assessments, deficiencies and charges (collectively, "Damages") caused by, relating to or arising from: (i) a material default in the performance by such Party of its obligations hereunder (including

---

[1] Defendants did not submit a Rule 56.1 Statement or a Counterstatement to Plaintiff's Rule 56.1 Statement. The Court deems the facts in Plaintiff's Rule 56.1 Statement, when supported by the record, to be undisputed.

without limitation Distributor's refusal or failure to comply with any of the requirements, provision, terms or conditions of this Agreement . . . .

Dkt. No. 69-1 § 17.1; Dkt. No. 112 ¶ 9.

The unpaid invoices are dated from June 22, 2021, to August 14, 2021.  Dkt. No. 69-2; Dkt. No. 109-1.  There are 22 invoices in total.  Four are dated June 22, 2021; six are dated June 29, 2021; one is dated July 6, 2021; one is dated July 8, 2021; five are dated July 14, 2021; and one is dated each on July 21, 2021, July 28, 2021, August 11, 2021, August 13, 2021, and August 14, 2021.  Dkt. No. 69-2 ("Unpaid Invoices"); Dkt. No. 109-1.[2]  As indicated in this Court's prior Opinion and Order, those prior invoices summed up to an amount of $9,212,256.94.  Dkt. No. 102 at 16–18; Dkt. No. 109-1.

Wistron filed suit through its counsel Lazare Potter Giacovas & Moyle LLP ("LPGM") for the purpose of collecting the amounts due under the Unpaid Invoices as a result of Defendants' defaults on their payment obligations.  Dkt. No. 110 ¶ 3; Dkt. No. 112 ¶ 13.  The total amount of attorneys' fees and disbursements incurred through June 30, 2023 (the date that Wistron filed its renewed motion) in litigation counsels' representation in this litigation is $588,280.62 in attorneys' fees and $11,225.28 in disbursements, for a total of $599,505.90.  Dkt. No. 110 ¶¶ 8, 15; Dkt. No. 112 ¶ 12.  The litigation counsels' hourly rates and their experience are as follows:  $800 for Mr. Robert Anthony Giacovas, a named partner with thirty-six years' experience; $600 for Ms. Lainie E. Cohen, a partner with twenty-two years' experience; and $400 for Mr. Jacob Ari Englander, an associate with 10 years' experience.  Dkt. No. 110 ¶ 6; Dkt. No. 112 ¶ 14.  In total, since LPGM was first retained by Wistron in this matter on

---

[2] Plaintiff, in its Rule 56.1 Statement, listed a different number of total invoices that does not include the correct number of invoices for July 14, 2021, and does not include any of the invoices for the dates following July 14, 2021 that are listed on the second page of Exhibit 1 of Roselen Chen's declaration, Dkt. No. 109-1.  The Court exercises its discretion here to consider the underlying record, and the exhibit, in its entirety.

January 19, 2022, and through June 30, 2023, Mr. Giacovas has billed 185.9 hours for a total of $148,720; Ms. Cohen has billed 351.0 hours for a total of $210,900; and Mr. Englander has billed 540.3 hours for a total of $216,120.  Dkt. No. 110 ¶ 8; Dkt. No. 112 ¶ 15.

The costs incurred by LPGM in litigating this matter, and referred to as disbursements in the LPGM invoices, total $11,225.28, and have been reimbursed by Wistron.  These disbursements were billed to Wistron at their actual cost to LPGM.  Dkt. No. 110 ¶¶ 13–14; Dkt. No. 110-2; Dkt. No. 112 ¶ 16.  This total is made up of several categories of disbursements, including the cost of LPGM's e-discovery platform at $544.32 per month, totaling $4,899.30 (this includes the cost of the service and data storage for the month of July 2023, which has yet to be billed to Wistron); court filing fees of $41.30; transcript fees of $2,392.18; service of process fees totaling $448; and translation costs of $2,900.  Dkt. No. 110 ¶¶ 13–14; Dkt. No. 110-2; Dkt. No. 112 ¶ 17.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And "[a]n issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *WWBITV, Inc. v. Village of Rouses Point*, 589 F.3d 46, 49 (2d Cir. 2009) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "[I]n assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008).

The party seeking summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  If the movant meets its burden, "the nonmoving party must come forward with admissible evidence to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).  To survive summary judgment, the nonmoving party "may not rely on mere speculation or conjecture as to the true nature of the facts," *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)), and must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citation omitted).  But if "the party opposing summary judgment propounds a reasonable conflicting interpretation of a material disputed fact," summary judgment must be denied.  *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).  "[F]ailure to respond to a motion for summary judgment 'does not alone discharge the burdens imposed on a moving party.'" *Sec. & Exch. Comm'n v. Simeo*, 2021 WL 4041562, at *6 (S.D.N.Y. Sept. 3, 2021) (quoting *Vermont Teddy Bear Co.*, 373 F.3d at 246).  Although the "failure to respond here allows the Court to accept the [movant's] factual assertions as true," the movant must "still

establish that the undisputed facts entitled [it] to a judgment as a matter of law." *Id.* (quoting, in part, *Vermont Teddy Bear Co.*, 373 F.3d at 246).

## DISCUSSION

Plaintiff moves for summary judgment on prejudgment interest, attorneys' fees, and costs. Dkt. No. 108. The Court treats each category in turn.

## I.    Prejudgment Interest

Plaintiff first moves for summary judgment on prejudgment interest. That question is addressed under New York law. As this is a case arises under diversity jurisdiction, Dkt. No. 39 ¶ 10, the Court is obligated to apply New York law as the law of the forum state, and under New York choice of law principles, the question of prejudgment interest is controlled by the law of the state whose law determined liability on the main claim. *Brown v. All Pro Contracting*, 2020 WL 6700576, at *3 (S.D.N.Y. Nov. 13, 2020) ("The awarding and calculation of prejudgment interest is a question of state substantive law.").[3] New York law determined the liability of the main claim and none of the parties have, at any point in this litigation, argued otherwise. *See* Dkt. No. 102 at 32.

"Under New York C.P.L.R. § 5001, a creditor is entitled to prejudgment interest on all sums due, as of the date they became due." *Cap. Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 296 (2d Cir. 2009); *see also KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 138 (S.D.N.Y. 2021), *aff'd*, 2022 WL 2759055 (2d Cir. July 13, 2022). "Under New York law, parties are generally free to set a different rate of prejudgment interest by contract, subject to State usury laws." *CA, Inc. v. Network Sols. Provider, Inc*., 2018 WL

---

[3] Further, the Distributor Agreement provides that "[t]his Agreement shall be interpreted by and governed in accordance with the laws of the State of New York without regard to its choice of laws provisions. The Parties hereby agree to submit to the non-exclusive jurisdiction of the courts located in the State of New York." Dkt No. 69-1 § 19.12.

6834472, at *2 n.2 (E.D.N.Y. Dec. 28, 2018).  "With regard to pre[-]verdict interest
determinations . . . , New York law does not permit the trial court to exercise any discretion
where a party is entitled to such interest as a matter of right."  *New England Ins. Co. v.
Healthcare Underwriters Mut. Ins. Co*., 352 F.3d 599, 603 (2d Cir. 2003); *see also* N.Y.
C.P.L.R. § 5001 ("Interest *shall* be recovered upon a sum awarded because of a breach of
performance of a contract." (emphasis added)).

 For the purpose of determining contractual interest, "[t]he applicable principles were set
forth by the New York Court of Appeals in *NML Capital v. Republic of Argentina*[, 952 N.E.2d
482, 488–89 (N.Y. 2011)]."  *KLS Diversified Master Fund, L.P.*, 532 F. Supp. 3d at 138.  "When
a claim is predicated on a breach of contract, the applicable rate of prejudgment interest varies
depending on the nature and terms of the contract."  *NML Capital*, 952 N.E.2d at 488.  "New
York courts have long held that when an agreement involving an indebtedness 'provides that the
interest shall be at a specified rate until the principal shall be paid, then the contract rate governs
until payment of the principal, or until the contract is merged in a judgment.'"  *BOCA Aviation
Ltd. v. AirBridgeCargo Airlines, LLC*, 2023 WL 2896048, at *23 (S.D.N.Y. Apr. 11, 2023)
(quoting *NML Capital*, 952 N.E.2d at 488–89).  "If the parties failed to include a provision in the
contract addressing the interest rate that governs after principal is due or in the event of breach,
New York's statutory rate will be applied as the default rate."  *NML Capital*, 952 N.E.2d at 488.

 The parties here agreed to an "interest rate that governs after the principal is due or in the
event of breach."  *Id*.  Under the terms of the Distributor Agreement, Wistron is entitled to
prejudgment interest after breach for failure to pay.  Section 4.2 of the Distributor Agreement
states:

> Distributor shall pay for all products within ninety (90) days after title transfer from
> WNC.  After the due date for any payment, the lesser of one and one half (1.5%)

> percent of the unpaid balance (annual rate of 18%) or the maximum late payment penalty charge permitted by law may be added for each month or part thereof that payment is delayed.  Distributor shall also reimburse WNC for all costs associated with WNC's attempt to collect amounts due under an order, including all costs associated with employing a collection agency or initiating legal action to collect amounts due.

Dkt. No. 69-1 § 4.2; Dkt. No. 112 ¶ 8.  The contract calls for the "lesser of" an "annual rate of 18%" or the "maximum late payment penalty charge permitted by law."  Plaintiff briefly contends that "[u]nder New York usury laws, this interest rate is reasonable."  Dkt. No. 108 at 8.  Under New York law, however, such a "'usury avoidance clause' does not, by itself, save an agreement from a charge of usury."  *Hillair Cap. Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 338 n.1 (S.D.N.Y. 2013).  In any event, because the contracting entities are corporations,[4] the maximum interest rate permitted by New York law before the loan becomes criminally usurious is 25%.  *See Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402, 451 (S.D.N.Y. 2022) ("Under New York law, a loan is criminally usurious if it has an annual interest rate exceeding 25%, N.Y. Pen. L. § 190.40, and such a usurious loan is void and unenforceable." (quoting *Fleetwood Services, LLC v. Ram Capital Funding, LLC*, 2022 WL 1997207, at *20 (S.D.N.Y. June 6, 2022))).  Therefore, the "annual rate of 18%" specified in the contract is not criminally usurious.  Dkt. No. 69-1 § 4.2.  Thus—even assuming without deciding that the criminal usury cap applies to this interest rate and that this obligation constitutes interest on a "loan"—the Court would apply an interest rate of 18% to the amount due from the unpaid invoices.

---

[4] Although there is a civil usury statute that "provides that a loan or forbearance is usurious when the lender charges an interest rate exceeding 16% per annum," "[c]orporations—like the parties in this case—may not assert civil usury as a defense in litigation."  *EMA Fin., LLC v. AIM Expl., Inc.*, 2019 WL 689237, at *6 (S.D.N.Y. Feb. 19, 2019); *see also Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612, 616 (N.Y. 2021); *Haymount Urgent Care PC v. GoFund Advance, LLC*, 635 F. Supp. 3d 238, 242 (S.D.N.Y. 2022).  Therefore, the civil usury rate is not applicable as a "maximum late payment penalty charge" within the meaning of the Distributor Agreement.

Under the terms of the Distributor Agreement, interest begins to run 90 days after title transfer of the products.  The Distributor Agreement states that "Distributor shall pay for all products within ninety (90) days after title transfer from WNC."  Dkt. No. 69-1 § 4.2.  The Distributor Agreement sets forth two different triggers for title transfer.  In the case that a Vendor Managed Inventory ("VMI") process is in place between the parties, "[t]itle to the VMI Products in the Consignment Stock will transfer from WNC to Distributor at the time that such items are removed from Consignment Stock by Distributor."  *Id.* Ex. H ¶ 5.  If the parties have not established a VMI process for the distribution of products, "[t]itle to the Products shall pass at the FOB [Freight on Board] Destination point."  *Id.* § 7.1(a).  Section 3.1 of the Distributor Agreement similarly provides that "[i]f VMI in Exhibit H is not implemented, Distributor shall take title and pass trigger EDI 867 per Exhibit G at the FOB Destination Point as set forth in Section 7.1.1 of this Agreement."  *Id.* § 3.1(e)(ii).

Plaintiff's Rule 56.1 Statement contains the dates of the Unpaid Invoices.  Plaintiff's Rule 56.1 Statement is silent as to the relationship between the date of the Unpaid Invoices[5] and the date of title transfer and does not contain any other information regarding Title Transfer. There are also no undisputed facts in the Rule 56.1 Statement as to whether a VMI process was in place between the parties.  Even if the Court were to exercise its discretion to look beyond the Rule 56.1 Statement at the underlying record, the date of title transfer is not self-evident from the attached materials.  Finally, the Court notes that even if title transferred on the date that the invoice was issued, it appears that Plaintiff calculated the interest based upon the date of the issuance of the invoice, and not the due date of payment.  The motion for summary judgment for interest is thus denied without prejudice to renewal upon a proper record.

---

[5] Such submission, however, was subject to erroneous omissions, *see supra* note 2.

## II.       Attorneys' Fees

Plaintiff next moves for attorneys' fees under the Distributor Agreement.  Like the issue of contractual interest, "[t]he awarding of attorneys' fees in diversity cases is governed by state law." *Pristine Jewelers NY, Inc. v. Broner*, 2020 WL 2319184, at *2 (S.D.N.Y. May 11, 2020) (quoting *Raymond James & Assocs., Inc. v. Vanguard Funding, LLC*, 2018 WL 8758763, at *4 (S.D.N.Y. Apr. 16, 2018)).  "Under the 'American Rule' a prevailing party is ordinarily not entitled to attorneys' fees except where expressly provided by statute or contract." *Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc*., 420 F. Supp. 2d 223, 227 (S.D.N.Y.2005).  "Under New York law, a prevailing party may recover attorney's fees from the losing party where authorized by . . . agreement." *Varbero v. Belesis*, 2020 WL 5849516, at *7 (S.D.N.Y. Oct. 1, 2020)).  In New York, however, "the court should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract." *AT & T Corp. v. Publ'g Concepts L.P*., 2010 WL 1191380, at *5 (S.D.N.Y. Mar. 29, 2010) (Chin, J.) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003)); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear.").  In that light, "[t]o ensure that fees are not awarded in the absence of an express agreement, the courts have interpreted such provisions strictly." *Nationwide Auction Co. v. Lynn*, 1996 WL 148489, at *9 (S.D.N.Y. Apr. 1, 1996).

The Court first addresses Section 4.2 of the Distributor Agreement, which provides that "Distributor shall . . . reimburse WNC for *all costs* associated with WNC's attempt to collect amounts due under an order, including *all costs* associated with *employing a collection agency* or *initiating legal action* to collect amounts due."  Dkt. No. 69-1 § 4.2 (emphasis added); Dkt.

No. 112 ¶ 8.  There is significant authority in this district and among New York courts that the term "costs" does not allow for the payment of attorneys' fees.  *See, e.g.*, *Homebridge Mortg. Bankers Corp. v. Vantage Cap. Corp.*, 2008 WL 5146957, at *6 (S.D.N.Y. Dec. 5, 2008) ("New York courts have construed the term 'costs' in various contracts as excluding attorneys' fees.") (collecting cases); *Nacional Financiera, S.N.C. v. Americom Airlease, Inc.*, 803 F. Supp. 886, 893 (S.D.N.Y. 1992) ("Under New York law, the term 'costs' does not include attorneys' fees."); *Golub v. Bd. of Managers of Greentree at Murray Hill*, 899 N.Y.S.2d 844, 845 (1st Dep't 2010) ("[T]he terms 'costs' and 'expenses' do not include attorney fees in the absence of express language to that effect in the contract or a statute."); *Royal Disc. Corp. v. Luxor Motor Sales Corp.*, 170 N.Y.S.2d 382, 383 (1st Dep't 1957) (same); *cf. Hines v. City of Albany*, 862 F.3d 215, 221 (2d Cir. 2017) ("Turning to our order in this case, we expressly distinguished between 'costs' and 'attorneys' fees' in the body of the order, but our decretal language referred only to costs.").  That longstanding understanding of the term "costs" indicates that the phrase "all costs" would exclude attorneys' fees.

The remaining language of Section 4.2 also does not make it sufficiently clear that the parties intended to modify the commonly understood term "costs" to include an obligation to pay for attorneys' fees.  The section refers in the disjunctive to "employing a collection agency" or "initiating legal action."  Dkt. No. 69-1 § 4.2.  Those two phrases can be understood to capture conduct short of prosecuting a legal action.  New York courts have held that "collection costs" do not include attorneys' fees.  *See, e.g.*, *Utilisave Corp. v. Benjamin Shapiro Realty Co., L.P.*, 723 N.Y.S.2d 669, 669 (1st Dep't 2001) ("[W]e find that the provision in the agreement providing that defendant would be liable for 'collection costs' did not include liability for attorney's fees.").  Even when the language of a contract has provided for reimbursement of "*all*

11

*costs* associated with collecting delinquent or dishonored payments," courts applying New York law have declined to grant attorney's fees as such language "does not explicitly provide for attorneys' fees." *AT&T Corp.*, 2010 WL 1191380, at *6 (emphasis added). The reference to "employing a collection agency" does not eliminate the ambiguity or make it "unmistakably clear" that the parties intended Genesis to have to assume Wistron's attorneys' fees when there was a genuine dispute between the two that rose to the level of litigation. *See Oscar Gruss & Son, Inc.*, 337 F.3d at 199. To "employ" simply means to "[t]o make use of" or "[t]o hire." *Employ*, Black's Law Dictionary (11th ed. 2019). A "collection agency" is "a business that collects money that is owed to other companies for them." *Collection Agency*, Cambridge Dictionary (last accessed Aug. 14, 2023); *see also* Investopedia, "Collection Agency: Definition, How It Works, and Regulations," https://www.investopedia.com/terms/c/collectionagency.asp (last accessed Aug. 13, 2023) (defining a "collection agency" as "a company used by lenders or creditors to recover funds that are past due or from accounts that are in default"); *see also Citibank, N.A. v. Yanling Wu*, 154 N.Y.S.3d 327, 330 (2d Dep't 2021) (noting under New York City Administrative Code that "[t]he definition of 'debt collection agency' also includes 'a buyer of delinquent debt who seeks to collect such debt'" (quoting N.Y.C. Admin. Code § 20-489)); *Lawrence v. First Fin. Inv. Fund V, LLC*, 444 F. Supp. 3d 1313, 1321 (D. Utah 2020) (citing additional definitions). Although collection agencies may employ legal action to collect debt, such debt collection may occur without the use of any legal services.[6]

---

[6] Indeed, some state and local laws differentiate and regulate "collection agencies" in part by the degree of which they utilize legal services versus other, more "traditional" functions of debt collectors. *See* N.Y.C. Admin. Code § 20-489 (stating that a "debt collection agency" "shall also include a buyer of delinquent debt who seeks to collect such debt either directly or through the services of another by, including but not limited to, initiating or using legal processes or other means," but excluding "any attorney-at-law or law firm collecting a debt in such capacity on behalf of and in the name of a client solely through activities that may only be performed by a

That the term "all costs" does not include fees is further reinforced by the subsequent clause which refers to the cost of "initiating legal action."  Dkt. No. 69-1 § 4.2.  It is a well-settled principle of contract interpretation that the Court must give "each word and phrase its plain meaning."  *Edgewater Const. Co. v. 81 & 3 of Watertown, Inc*., 806 N.Y.S.2d 817, 819 (4th Dep't 2005); *Brooke Grp. Ltd. v. JCH Syndicate*, 663 N.E.2d 635, 638 (N.Y. 1996) ("The words and phrases used by the parties must, as in all cases involving contract interpretation, be given their plain meaning.").  "[E]very word of an agreement should be presumed to have been used with some purpose, [and] the meaning of each word must be determined and its effect considered in connection with the other words of the agreement."  *First Nat. Bank v. Jones*, 114 N.E. 349, 250 (N.Y. 1916).  "Initiation" is defined as "to cause or facilitate the beginning of" or to "set going."  *Initiation*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/initiate (last visited Aug. 13, 2023).  As evidenced by the hourly billing in this matter and by general legal practice, attorneys' fees typically extend past the "initiation" of legal action and accrue based on the time spent on a matter.  Had the parties sought to include the provision of attorneys' fees as part of "all costs" reimbursed, they presumably would not have included the term "initiating," and would have not simply referred only to "costs."  *See* Dkt. No. 110-1 (hourly invoices of the attorneys).

---

licensed attorney," but including "any attorney-at-law or law firm or part thereof who regularly engages in activities traditionally performed by debt collectors"); Conn. Gen. Stat. Ann. § 36a-805 (prohibiting a "consumer collection agency" from "[f]urnish[ing] legal advice or perform[ing] legal services or represent[ing] that it is competent to do so, or institute[ing] judicial proceedings on behalf of others"); *Hoffman v. Transworld Sys., Inc*., 806 F. App'x 549, 553 (9th Cir. 2020) (discussing under Washington's consumer protection statute "where law firms and attorneys may be liable under the [consumer protection act] where they 'go[ ] outside the practice of law and engage[ ] in a commercial enterprise' such as debt collection"); *cf. Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (holding that the term "debt collector" in the Fair Debt Collection Practices Act included a lawyer who "regularly," through litigation, tries to collect consumer debts).

The closest analogue from the Second Circuit is *Alland v. Consumers Credit Corp*., 476 F.2d 951 (2d Cir. 1973), in which the court distinguished the term "costs of suit," from "costs" alone, in concluding that the contract allowed for the shifting of attorneys' fees.  *Id*. at 957.  The court there emphasized that "no ambiguity exists as to what is commonly meant by the term 'costs' as that word is used by courts, legislatures, and attorneys, and that the term does not normally refer to counsel fees."  *Id*. at 956.  But in construing the terms of the contract against the drafter, and relying on the canon that "the words used should be given the meaning which a laymen would reasonably have attributed to them," the court concluded that "a reasonable layman would have been justified in believing that in the event appellee subjected him to any cost in suing on the promissory notes appellee would assume liability for all costs of such a suit." *Id*. at 957–58.  The court noted that "[i]f appellee had wished to limit its liability for such expenses to mere court costs or filing fees, it would have used the unambiguous term 'costs.'" *Id*. at 958.  The Distributor Agreement here uses the "unambiguous" term "costs," which the Second Circuit held refers to "court costs or filing fees."  *Id*.  Thus, the language of Section 4.2 is not "sufficiently clear and unambiguous to express the intent of the parties" to allow for the reimbursement of attorneys' fees in the case, here, of "legal action" absent involvement of a "collection agency."  *Libra Bank Ltd. v. Banco Nacional De Costa Rica, S.A*., 570 F. Supp. 870, 893 (S.D.N.Y. 1983); *cf. id*. (allowing for the shifting of attorneys' fees when the language provided "all expenses legal *or otherwise*" (emphasis in original)); *see also AT&T Corp*., 2010 WL 1191380, at *6 (denying fees when it did not "explicitly provide for attorneys' fees").

Plaintiff, however, also relies on Section 17.1 of the Distributor Agreement, which specifically uses the term "attorney's fees."  That Section in strikingly broad in its coverage.  It states:

Each Party shall defend, indemnify and hold harmless the other Party, its respective officers, directors, Affiliates, subcontractors, assignees and employees, or any of them, from and against *all losses, damages* (actual, increased, or statutory), liabilities, expenses, costs (*including court costs and attorney's fees*), *claims, suits, demands, actions, causes of actions, proceedings, judgments, assessments, deficiencies and charges* (collectively, "Damages") *caused by, relating to or arising from*: (i) a material default in the performance by such Party of its obligations hereunder (including without limitation Distributor's refusal or failure to comply with *any of the requirements, provision, terms or conditions of this Agreement*; (ii) a material breach of its warranties or representations as made herein or other written or oral statements made to WNC in connection with this Agreement or the WNC policy application and due diligence process; (iii) its negligent acts or omissions; (iv) its intentional misconduct; (v) damage or injury (including death) to persons, property, reputation, or business opportunity cause by or sustained in connection with the performance of this Agreement or conditions created hereby; and (vi) any material misrepresentation or omission made in connection with the WNC policy due diligence process (The Distributor shall indemnify and hold harmless WNC and its officers, directors, agents, subsidiaries, Affiliates, subcontractors, assignees and employees, or any of them, from and against all Damages asserted against, or incurred by, WNC resulting from the Distributor's making any express or implied warranty, indemnity or representation to its Customers for its own account as described in Article 8 hereof.

Dkt. No. 69-1 § 17.1 (emphasis added); Dkt. No. 112 ¶ 9.  The breadth of that language reflects

an intent by the parties to not limit indemnification of attorneys' fees to third-party claims.  In

*Hooper Assocs., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903 (N.Y. 1989), the New York Court

of Appeals stated that the default rule in New York is that "attorney's fees are incidents of

litigation and a prevailing party may not collect them from the loser unless an award is

authorized by agreement between the parties, statute or court rule."  *Id.* at 904.  The court in

*Hooper* concluded that the indemnification clause "d[id] not contain language clearly permitting

plaintiff to recover from defendant the attorney's fees incurred in a suit against defendant."  *Id.* at

905.  There, the language of the clause "obligate[d] defendant to 'indemnify and hold harmless

[plaintiff] . . . from any and all claims, damages, liabilities, costs and expenses, including

reasonable counsel fees' arising out of breach of warranty claims, the performance of any service

to be performed, the installation, operation and maintenance of the computer system,

infringement of patents, copyrights or trademarks and the like." *Id.* (citation omitted). Those subjects were "susceptible to third party claims" and were not "exclusively . . . referable to claims between the parties themselves or support an inference that defendant promised to indemnify plaintiff for counsel fees in an action on the contract." *Id.* Further, that reading made sense in light of a requirement in that contract of notification and assumption of third-party claims that specifically referred to the indemnification provision. *Id.*

"Notwithstanding the strict construction rule enunciated in *Hooper*, courts have routinely held that where the indemnification is broad, in the absence of limiting language, both intra-party and third party claims are covered." *In re Part 60 RMBS Put - Back Litig.*, 146 N.Y.S.3d 109, 122 (1st Dep't 2021); *see also In re Bridge Constr. Servs. of Fla., Inc.*, 2016 WL 4625687, at *3 (S.D.N.Y. Sept. 6, 2016) ("*In re Bridge*") ("Other courts have recognized the limited nature of *Hooper*'s holding."). In *In re Bridge*, the court found that intra-party fees were covered by the indemnification provision, which stated that "Bridge agreed to 'indemnify, defend, and hold harmless Contractor [Tutor Perini] . . . from and against *all* liability, claims, damages, losses, costs, fines and expenses, (including attorney's fees and disbursements) caused by, *arising out of or resulting from* the performance of the Work or the acts or *omissions* of the Subcontractor [Bridge],'" *In re Bridge*, 2016 WL 4625687, at *3 (emphasis in original) (quoting the indemnification provision), provided that such "any such liability, claim, damage, loss, cost, or expense is caused, in whole or in part, by . . . negligent act or omission . . . ." *Id.* at *1. The language here in Section 17.1 is even broader than that in *In re Bridge*. Like *In re Bridge* and similar New York caselaw, the provision is expansive, covering "*all* losses, damages (actual, increased, or statutory), liabilities, expenses, costs (including court costs and attorney's fees), claims, suits, demands, actions, *causes of actions, proceedings, judgments, assessments,*

*deficiencies and charges.*"  Dkt. No. 69-1 § 17.1; *see also Crossroads ABL LLC v. Canaras Cap.*

*Mgmt., LLC*, 963 N.Y.S.2d 645, 647 (1st Dep't 2013) (rejecting *Hooper* because the

"indemnification provision is . . . , extremely broad, applying to 'any and all claims, demands,

actions, suits or proceedings,' provided that Crossroads' involvement therein is by reason of its

service, etc. to Quad–C.").  Further, the link to the damage need not be "caused by," but only

"*relating to* or arising from" Genesis's breach or acts or omissions.  Dkt. No. 69-1 § 17.1

(emphasis added); *see also In re Bridge*, 2016 WL 4625687, at *3 (emphasizing the expansive

language of "caused by, arising out of or resulting from").  Finally, the indemnification provision

here includes not only, as in *In re Bridge*, "negligent acts or omissions," but also separately

identifies material breaches of the agreement, "including *without limitation* Distributor's refusal

or failure to comply with *any of the requirements, provision, terms or conditions of this*

*Agreement*."  Dkt. No. 69-1 § 17.1 (emphasis added).  Indeed, it would be difficult to discern

what would *not* be captured by the indemnification provision.  *See WSA Grp., PE., PC v. DKI*

*Eng'g & Consulting USA PC*, 116 N.Y.S.3d 719, 725 (3d Dep't 2019) ("Nothing in the

provision's broad language, which requires defendant to indemnify plaintiff 'against any claim,

demand or cause of action of every name or nature,' reveals that the parties intended to exclude

claims such as this from its coverage or to limit its scope to breaches of duty to third parties.");

*Healthnow New York, Inc. v. David Home Builders, Inc*., 112 N.Y.S.3d 360, 363 (4th Dep't

2019) (emphasizing the "highly inclusive" language in rejecting application of *Hooper* (citation

omitted)); *Square Mile Structured Debt (One), LLC v. Swig*, 973 N.Y.S.2d 39, 40 (1st Dep't

2013) ("The indemnification clause at issue provides for coverage of extremely broad claims,

and is consistent with other clauses that have been held to provide for indemnification of

attorney's fees for intra-party disputes."); *see also Mid-Hudson Catskill Rural Migrant Ministry,*

*Inc. v. Fine Host Corp*., 418 F.3d 168, 178 (2d Cir. 2005) (Sotomayor, J.) (rejecting application of *Hooper* when there was "an indemnity clause that sweeps more broadly, providing for reimbursement of attorney's fees regardless of the nature of the underlying action"); *cf. In re Part 60 RMBS Put - Back Litig*., 146 N.Y.S.3d at 122 ("At bar, however, the indemnification is limited to Natixis' repurchase obligations under PSA section 2.03(d).  Because neither the Master Servicer nor the Servicer have any obligation of repurchase under this provision, the limitation is clearly only referable to claims by others, or third-party claims.").

In addition, Plaintiff does not simply seek attorneys' fees solely based on a breach-of-contract claim between itself and Genesis.  Plaintiff brought a claim against third-party GNET, who was not an original party to the Distributor Agreement.  Genesis purportedly assigned its duties under the Distributor Agreement to GNET.  As previously noted, the language of the indemnification clause is exceedingly broad, and provides that Genesis shall indemnify Plaintiff for all "costs" and "attorney's fees," not simply "caused by," but importantly, "*relating to* or arising from" a "material default in the performance" by Genesis in its obligations, "including without limitation Distributor's refusal or failure to comply with any of the requirements, provision, terms or conditions of this Agreement."  Dkt. No. 69-1 § 17.1 (emphasis added).  The costs and attorneys' fees from this suit arise at least in part from litigating this claim against third-party GNET (in addition to Genesis)—a claim directly "related to" the breach by Genesis through its failure to pay.  *Id*.  It is undisputed that Genesis attempted to assign or delegate its duties of payment to third-party GNET.  This Court found that even if Genesis had effected an assignment under the Distributor Agreement, Genesis had not effected a novation that would relieve itself of liability for the failure of GNET to fulfill its assigned duties under the Distributor Agreement.  Dkt. No. 102 at 41.  GNET, after unsuccessfully moving to dismiss and to transfer

venue, eventually conceded its liability in this case on summary judgment and did not oppose the entry of judgment against it.  Dkt. No. 101.  The Court then granted summary judgment finding GNET (along with Genesis) jointly and severally liable for an award of $9,212,256.94.  Dkt. No. 102 at 50.  Plaintiff thus brought a successful claim against a third-party that brings its costs and attorneys' fees within the meaning of Section 17.1.  *Cf. In re Bridge*, 2016 WL 4625687, at *3 ("This case was not, as in *Hooper*, a simple breach of contract action between the two parties to a contract that contained an indemnification agreement that was reasonably construed only to apply to attorneys' fees in the event of a third party claim.  This case involved a third party claim.").  Defendants, as on the motion to dismiss, have not disputed this construction of the indemnification clause.  *Wistron Neweb Corp. v. Genesis Networks Telecom Servs., LLC*, 2022 WL 17067984, at *15 n.5 (S.D.N.Y. Nov. 17, 2022).  Had Plaintiff brought the claim solely against GNET, there would be little dispute that it would be able to recover for its costs and fees incurred in prosecuting that action.  Nor does Genesis in its limited objection—even assuming for the purposes of argument that the indemnification provision does not apply to intra-party suits—assert any defense with respect to the distinguishability or overlap of the fees expended between the claims against it and GNET.  *See In re Refco Sec. Litig*., 890 F. Supp. 2d 332, 356 (S.D.N.Y. 2012).

The Court thus proceeds to assess the reasonability of the attorneys' fees requested. "Under New York law, 'when a contract provides that in the event of litigation the losing party will pay the attorney' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable.'"  *KLS Diversified Master Fund, L.P.*, 532 F. Supp. 3d at 139 (quoting *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992)).  "The fee applicant bears the

burden of documenting the appropriate hours expended and hourly rates, and establishing that they are reasonable." *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 365 (S.D.N.Y. 2001). "In determining the reasonableness of attorneys' fees, courts examine a variety of factors, including 'the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged . . . for similar services; and the amount involved.'" *Vista Outdoor Inc. v. Reeves Fam. Tr.*, 2018 WL 3104631, at *4 (S.D.N.Y. May 24, 2018) (quoting *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 2010 WL 1141145, at *6 (S.D.N.Y. Mar. 24, 2010)). The Court has "broad discretion to determine a fee award," and while the "lodestar is a presumptively reasonable fee, . . . it is not conclusive in all circumstances." *Pristine Jewelers NY, Inc.*, 2020 WL 2319184, at *3 (citations omitted); *see also Parker Hannifin Corp. v. N. Sound Properties*, 2013 WL 3527761, at *2 (S.D.N.Y. July 12, 2013) ("Lodestar analysis is certainly appropriate in cases in which the parties' contract authorizes an award of 'reasonable attorney's fees.'"). "Both [the Second Circuit] and the Supreme Court have held that the lodestar . . . creates a presumptively reasonable fee." *Millea v. Metro–North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks omitted). "[W]here a contract authorizes an award of attorneys' fees, such an award becomes the rule rather than the exception." *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993); *see also Casmento v. Volmar Constr., Inc.*, 2022 WL 17666390, at *3 (S.D.N.Y. Dec. 14, 2022).

The total amount of attorneys' fees and disbursements incurred through June 30, 2023, in litigation counsels' representation in this litigation is $588,280.62 in attorneys' fees. Dkt. No. 110 ¶¶ 8, 15; Dkt. No. 112 ¶ 12. The litigation counsels' hourly rates are $800 for Mr. Giacovas, a named partner with thirty-six years' experience; $600 for Lainie E. Cohen, a partner

with twenty-two years' experience; and $400 for Jacob Englander, an associate with 10 years' experience.  Dkt. No. 110 ¶ 6; Dkt. No. 112 ¶14.  "The rates to be used in calculating the . . . lodestar are the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  *Gierlinger v. Gleason*, 160 F.3d 858, 883 (2d Cir. 1998) (citation omitted).  The relevant community for purposes of this motion is New York City as the relevant community for determining rates is the "district in which the reviewing court sits."  *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).  Genesis does not challenge the reasonableness of the hourly rates.  Based on the Court's independent review, moreover, the hourly rates appear to be reasonable under the law in this District.  *See Vista Outdoor Inc.*, 2018 WL 3104631, at *5 (describing similar and higher rates for partners and associates in a complex dispute) (citing cases); *Cap. v. Democratic Republic of Congo*, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014) ("[B]illing rates substantially above those charged here, including partner billing rates in excess of $1,000 an hour, are by now not uncommon in the context of complex commercial litigation."); *see also id*. (finding average billing rate of "the ten associates, [of] $505.55" to be reasonable).

Genesis also does not challenge the reasonableness of the hours.  Fees may be reduced based on "vagueness, inconsistencies, and other deficiencies in the billing records."  *Kirsch v. Fleet Street, Ltd*., 148 F.3d 149, 173 (2d Cir. 1998).  In total, since LPGM was first retained by WNC in this matter on January 19, 2022, and through June 30, 2023, Mr. Giacovas has billed 185.9 hours for a total of $148,720; Ms. Cohen billed 351.0 hours for a total of $210,900; and Mr. Englander billed 540.3 hours for a total of $216,120.  Dkt. No. 110 ¶ 8; Dkt. No. 112 ¶ 15.  The Court recognizes that there was substantial motion practice involved in the case.  Defendant Genesis and GNET both filed separate motions to dismiss.  *See* Dkt. Nos. 41, 44.  GNET also

filed a separate motion to transfer the case.  Dkt. No. 33.  Plaintiff filed an amended complaint.

Dkt. No. 39.  Plaintiff also filed a successful motion for summary judgment, Dkt. No. 67, which

involved Plaintiff responding to at least five affirmative defenses, as well as questions of

standing, Dkt. No. 75, and complex questions of law.  Plaintiff further successfully responded to

Defendants' motion to strike, Dkt. No. 73.  There are also undisputed facts that Defendants

submitted 25 different document requests, which resulted in the production of over 13,000 pages

of documents.  Dkt. No. 112 ¶¶ 20–21.  Defendants also propounded a total of eighteen

interrogatories.  *Id*. ¶ 22.  Plaintiff submits approximately 71 pages of invoices submitted to its

client indicating the details of the billing in substantial detail.  Dkt. No. 110-1.  Upon inspection,

the entries are detailed and sufficiently distinct; there is not "'a substantial amount' of block

billing in [this] fee request" to warrant percentage cuts.  *Aiello v. Town of Brookhaven*, 2005 WL

1397202, at *3 (E.D.N.Y. June 13, 2005).

## III.    Costs

Plaintiff finally moves for its costs under the Distributor Agreement.  Section 17.1

provides for recovery for "expenses, costs (including court costs[)]."  Dkt. No. 69-1 § 17.1.

Plaintiff enumerates various disbursements as costs, including the cost of LPGM's e-discovery

platform at $544.32 per month, totaling $4,899.30 (including the cost of the service and data

storage for the month of July 2023, which had, at the time of the filing of the motion, yet to be

billed to Wistron); court filing fees of $41.30; transcript fees of $2,392.18; service of process

fees totaling $448; and translation costs of $2,900.  Dkt. No. 110 ¶¶ 13–14; Dkt. No. 110-2; Dkt.

No. 112 ¶ 17.  These costs are reasonable and sufficiently documented.  *See, e.g.*, *United*

*States v. Romelien*, 2006 WL 721312, at *3 (E.D.N.Y. Mar. 16, 2006).  The Court thus grants

summary judgment for Plaintiff on a total of $11,225.28 in costs.

## CONCLUSION

Plaintiff's motion for summary judgment is DENIED without prejudice to renewal as to interest.  Plaintiff shall submit any renewed motion for summary judgment for interest by August 29, 2023.  The motion is GRANTED as to attorneys' fees.  The motion is GRANTED as to costs. An award is granted in the amount of $599,505.90, jointly and severally, as to Defendants GNET and Genesis.

The Clerk of Court is respectfully directed to close Dkt. No. 108.

Dated: August 14, 2023
     New York, New York
                                   LEWIS J. LIMAN
                          United States District Judge